Mr. Gutierrez's convictions must be reversed because the government introduced evidence of poverty to show motive and also argued facts and evidence to prove his guilt. Regarding the evidence of poverty in this case, I want to make perfectly clear that it is the government that put this evidence in and argued it first. For example, they're the first ones that introduced evidence of Mr. Gutierrez's statements that he needed cash. Not needed cash. He needed the cash. The cash. What cash was he talking about? If you recall the facts of this case... The cash that he would have been paid for driving the car across the border. That's what the cash meant. That's the context of the way he said it. Although you have to remember that he testified... Then he denied that he got paid any cash or was expecting any cash. Which was inconsistent with his admission that he had gotten that he had said I needed the cash. Pardon me? Which was inconsistent with the statement I needed the cash. Correct. But they also were the first to introduce the fact that he did not have any cash on him at the time. And they're the first ones to introduce the evidence of the pond slips and they're the only one to argue... Time out. The government was the first to introduce the fact that he had no cash on him at the time? Correct. That's excerpt of record 111 on the direct of the case agent. Defense counsel then took up that subject on cross but it was the government that did it first. Also they got in the pond slips and they in their initial closing... Were the ones that argued the incentive came in part from the pond slips that showed his poverty. That he had the incentive to commit the offense. What was the time period between the pond slips and the events that we're talking about? Two months? Yes. I believe actually a couple days over two months. What does ponding something two months prior to these events have to do with anything on the day of the events? Well that's part of the argument that it was irrelevant and it's prejudicial because they used those pond slips... to then argue that that was the incentive to commit the offense. Meaning he was poor two months before, he didn't have any cash on him at the time. There's his incentive to commit the offense. Well you know what the red brief says about that. What's your response to the government's claim? That's not what it was used for. It was not to show poverty. It was to impeach statements and to try to clarify the truth of who said what, when and to whom. Just looking at the context of their closing argument. It's not how they used it. I mean that's what he may be arguing now. But if you look at the excerpt of record how he goes through mentioning the incentive to commit the offense is money. And then he said when you have the pond slips, you use the pond slips in connection with needing money in the offense. So while they may be saying it's pure impeachment, that's not how they used it during trial. In this case... I'm sorry, how are you saying they did use it? They didn't use it purely for impeachment. I understand they didn't, but how did they use it that was impermissible? For the exact proposition that this court has said, that you can't use poverty, such things as unemployment bankruptcy, to argue simply because of poverty that the person had the motive to commit the offense. You're characterizing the government's argument. Yes. Precisely what part of the government's argument do you want us to look at to see that you're right, that this was simply trying to rub poverty in his face? Excerpts of record, I believe it's 210 to 211 or it's 209 to 210. It's in the brief. You didn't write the brief, did you? I did write the brief. Page 11? I believe so, yes. As you can see on page 210, they start out with talking about the incentive. If you get on the bottom of that page, you can see the incentive and you can see how the value increases, etc. Can you see the numbers on the left side? Pardon me? Do you see those numbers on the left-hand side? Do you want me to go to the excerpt of record page? Well, you said page 210, right? Yes. You said at the bottom of the page, there are numbers with lines. Yes. I see the numbers. Okay. Which number is next to the part you're reading from? I'm just trying to find the place on the page where you're referring to. Okay. I'm trying to find it also. I'm sorry. Page 211 of the excerpt of record, line 1. So you could see the incentive and you could see how the value increases and that's what she brought without contradiction. She's talking about the value. It goes back though. However, if you could get that marijuana into Imperial County, she testified without contradiction that the value would increase from a low of 300 a pound to 500 a pound using approximate prices. So you can see the incentive and you can see how the value increases. Correct. And then you go two paragraphs down, middle of that paragraph, line 15 or line 14. Apparently there's a need for money there sometimes. So he did have a need for cash or did he not have a need for cash? And then we take a look at the pawn slips from February. Apparently there is a need for money there sometimes. That's two months before. Correct. And that's what I'm saying. They connect the incentive to events being poor two months before. And that's exactly what this court is criticized by. Why is two months before relevant? I thought when you have pawn slips. I mean, I don't know. I've never pawned anything, but I thought what happens is you have the pawn slips and you pawn something today. And then you can come back later and repay the loan. You have a certain amount of time and get the thing out of hock. Because the cross-examination. So if you get pawn slips two months ago, you might not need the cash to repay it until a month later. You know, whenever the time's up on the pawn slips. And the cross-examination showed that he hadn't repaid it. So you don't have his. I believe accordion was one of the things. So he was using the poverty to connect it to didn't have any money. And the motive to commit the offense. Turning to the to the prosecutorial misconduct. Is saying you need money for a specific purpose. The same thing as saying you have general poverty. Same as saying you are poor. I think saying stuff like you were pawning items is the same as saying he was unemployed at the time. Or was under bankruptcy. And those are the type of things that this court has said. You can't introduce those in evidence to say you had a motive to the offense. So if you're just using general items that an individual is poor. Such as pawning items. That's what's criticized by this court. Because you shouldn't be able to argue just because someone's poor. They had an incentive to commit the offense. It seems a little odd to have to demonstrate to a jury that somebody would do things for money. You know I think we should all assume general greed. And that's why it's criticized. It seems almost trivial. It's not. If you look at Mitchell. It criticizes it because of the impact it may have on the jury. Meaning arguing that a poor person. Someone that has evidence against them that he's poor. Is at a severe disadvantage to someone that maybe is rich. That just wants to get richer. Poor people shouldn't have some evidence put in against them. Such as pawn slips that can be prejudicial against them. When rich people can't. When the same incentive to make more money is there. I guess it's the prejudice part of this that I have some difficulty with. I mean we know people commit crimes for money all the time. Whether they are rich or poor. I mean lots of people. Having money doesn't prevent people from committing crime. Being poor doesn't force people to commit crimes. There are lots of poor people who live within the law. I mean lots and lots of poor people. And sadly enough. There are rich people who commit crimes to get more money. The desire for money doesn't seem to be particularly needs related. Well the danger here is that because they put the pawn slip in. And connected those pawn slips to the incentive to commit the offense. It created the danger that the jury would now have convicted Mr. Gutierrez. Was there a separate objection to the pawn slips? Was there a hearsay objection to the pawn slips? There was an objection. And the district court said let's see what these are. What was the nature of the objection? Well right when they identified the pawn slips. Defense counsel said your honor. And is cut off. And overruled. What was the nature of the objection? The nature of the objection could only be from the context. Was it that this is evidence. This is evidence. Inadmissible evidence of poverty? That was never specifically said. It was never stated. Period. Strike specifically. Well yeah. But the objection was cut off after your honor also. The district court didn't interrupt defense counsel. And I agree it wasn't raised later. But also the government has not raised in its brief that this is plein air. So they've waived I think any plein air standard on that. I see I only have six seconds left. I will rise. I always find it strange when judges cut off objections. I was a juror once a while back. And the judge kept cutting off objections. I wanted to overrule him. It makes it difficult. I was just a juror. It does make it difficult for appellate counsel. Well maybe not. Maybe it makes it easier. Maybe then you're entitled to fill in whatever objection you can now think of. And you can claim well that's what the trial. Were you the trial lawyer? Pardon? No. Oh okay. Even better. Then you don't even have to claim that's what you had in mind. You can just say well you don't know. I'm sure defense counsel had exactly everything I say in this brief in mind. Yes. That's exactly what happens at trial as we know. Yes. Okay thank you. We'll hear from the government. Good morning. May it please the court and counsel. I'm Bruce Smith on behalf of the United States. You have to admit Mr. Smith that this is just wholly unnecessary. This was wholly unnecessary to get into and muddied up what otherwise would have been a perfectly fine conviction. Getting into pawn slips and needs for money and all of that. Were you trial counsel? Your Honor I submit that. Were you trial counsel? Yes sir I'm sorry. Yes I was. Why get into these things? I am just. Because my response is rather straightforward. He offered his motivation. I think that's very important. We have a rather what we refer to as a cold border bust. You have a person just coming into the port. There's drugs in the vehicle. And he stopped as he is being walked off to go into custody. Looked at the agents and exclaimed I did it for the money. I needed the cash. And so he offered his motivation right there which is far different than any case that has been cited in the briefing. It's a person standing up and affirmatively saying in so many words the reason I did it was for the money. It's not us researching a person. So maybe so you can bring that in. But you have to bring in proof that when he shouts out I did it for the money. You know he really did do it for the money. I mean you don't think jurors have the common sense to understand that people don't shuttle drugs across the border for their health. You know they do it for the money. I mean that's why most crimes happen. Either they do it for love. You know some sort of passion. Right. And we don't see many kinds of passion for the record. Right. I mean I bet you probably you've seen very few if any. All the crimes we see are for the money. Well we're very fortunate that way because we assume the jurors come in and they realize that people if this guy is a drug courier he did it for the money. It's the oldest joke in the book. When Willie Sutton was asked why he robbed banks he said that's where the money is. But what do these pond slips have to do with this? I freely admit I can't follow the argument in your brief. Well I'm sorry. For instance defense counsel asked the defendant on direct examination did you tell the agents I did it for the money? Yes. Well did you expect to be paid? No. Well he did it for the money. He was in need of money. That's the part that I'm falling apart on. Two months before there was a pond transaction. A couple of pond transactions for about what? $50 or something like that? I don't call it a contract. Peanuts. And I just fail to see the relevancy between these pond slips and what you're talking about with needed the cash when he's coming across the border. How does it prove anything one way or another two months before? It was the best corroborative evidence available. What does it corroborate? Two months before the guy pawned a couple of nickel and dime items. Well along the same lines of him telling us that he's going to just borrow this car, drive it down from Los Angeles down to Mexicali and come back and find him at the port with absolutely no money in his pocket. How are you going to pay for gas? How are you going to take care of your trip? You're obviously not telling us the truth. And so we're. The problem is you run into 608B. You can't use specific instances of conduct to prove whether he's telling the truth. This is specifically what's prohibited by the Federal Rules of Evidence. You move 608B, you can't use specific instances of conduct. I think that's exactly what you're doing. You're using the pawn shop incident. I think it's character evidence. Would you like to take a look at 608B? Is it your submission that there's an exception to 608B for motive? You can use specific specific acts of misconduct when they're relevant to show motive. Are we talking about 608B or are we talking about 404B? Pardon me, 404B. Yes, sir. I was talking about 608B. Yes, sir. I mean, I may have a separate question about 404B, but I really was speculating. Would you like to just look at it? Go ahead. Pick it up. Just take a look at it. Take a look at 608B. Now, because there was no – the district judge did not give counsel a chance to articulate an objection, we don't exactly know what would have been objected to. But that's a perfectly good objection to 608B. It's a perfectly good objection in this situation. It's exactly what it's designed not to. I don't understand why you all think you have to do this. It's really – you've got all these slam-dunk cases. People come across the border with a bunch of drugs hidden in the car. They yell out, I did it for the money. I did it. And you have to put in all this stuff that just muddies up the waters? Well, I – I'm just absolutely baffled. It may have been an error, then, on my part. It may have been – it may have not been the best choice. Why don't you give me a chance to do it again without the error? You know, this is not often in life you get a chance to go back and do things again and correct the error. It's Bill Murray Groundhog Day. Get the White Claw over again. I saw that movie. So, you know, maybe that's the best resolution. Would you say? I respectfully submit that it's not necessary. It would – any error would be harmless. That when we take a look at the body of evidence that was before the jury, that whether or not we introduced pawn slips was not the moving factor. The moving factor was the overall weight of the evidence. You must have thought it was pretty important because you not only introduced it, you talked about it at closing. This was something you harped on. It must have roomed pretty large in the scheme of things. What is the standard of review for the claim of harmless error? How must the evidence line up so that we can – if we find that poverty evidence admission was error, what is the standard of review? Must the error be harmless beyond any reasonable debate, or how would you style it? I believe, given the circumstances in the brief, that it would be that the facts are such that it's not debatable, that it's a – the case was relatively not complex. You know, I didn't think that in your brief you raised the harmless error claim. That's correct. So we don't really have harmless error here. So if we find error, we have to reverse. I believe there is authority. Permissive, permissive authority. Yes, sir. United States v. Gonzales Flores, 418 Fed 3rd 1093. And that's where they consider the length and complexity of the record, whether the harmlessness of the error is certain or debatable, and the futility and costliness of reversal or future litigation. I submit in this case – It's a short trial. What's the big deal? I mean, but it doesn't make you look real good or your office. You first of all load up evidence that's highly questionable trial, and then you leave out your best argument in your brief on appeal. I mean, I don't see why we should help you out here. You don't even bother to raise the harmless error argument. I'm a little baffled. Anything else? No, sir. Okay. Thank you. I don't remember you had any time left. You had minus one. We'll make it plus one. How about that? So now you want to try to get your head knocked off. Go ahead. Yeah. I mean, you don't have to say anything. I just like to say that the jury did debate this case from 9 o'clock in the morning to 155 in the afternoon. The court just wanted lunch. I've tried cases for 23 years. That to me means absolutely nothing. Some of the courts mentioned time. I know, and it's crazy because you have no idea what they were doing. You presuppose from a time period that they must have had trouble with the evidence. They were debating it and all that kind of stuff. Jurors told me we just want – we were having fun. We were talking about the Super Bowl. We wanted to have lunch, and then we were going to come bring in our jury. You don't know what was going on. I guess I should have just sat down. Yeah. A warning to the audience. Well, from my experience on the jury, we wanted to get out of there as soon as possible. We didn't wait for lunch. Anyway, thank you, counsel. The case is signed. You will stand for a minute.
judges: Kozinski, Trott, Bea